FILED SEP 24 2019 MARY C. LOEWENGUTH, CLERK WESTERN DISTRICT OF NY UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DANIELLA R. ANNARINO,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,
    Defendant.

---

**DECISION & ORDER**
18-cv-130-JWF

## Preliminary Statement

Plaintiff Daniella R. Annarino ("plaintiff" or "Annarino") brings this action pursuant to Title XVI of the Social Security Act seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), who denied her application for disability insurance benefits. See Compl. (Docket # 1). Presently before the Court are competing motions for judgment on the pleadings. See Docket ## 15, 20. For the reasons explained more fully below, plaintiff's motion for judgment on the pleadings (Docket # 15) is **denied** and the Commissioner's motion for judgment on the pleadings (Docket # 20) is **granted**.

## Background and Procedural History

On January 30, 2014, plaintiff filed for Supplemental Security Income, alleging disability beginning on August 1, 2013 based on various mental health issues. See Administrative Record, Docket ## 8, 19 (collectively paginated and hereinafter referred to as "AR"), at 18. Plaintiff's application was initially denied. AR at 98-103. Plaintiff, her attorney, and a vocational expert

1

appeared before Administrative Law Judge Sharon Seeley (the "ALJ") on June 15, 2016 for a hearing on the denial of plaintiff's application. AR at 33-77. The ALJ issued an unfavorable decision on October 3, 2016. AR at 18-28. Plaintiff appealed to the Appeals Council ("AC") and the AC denied plaintiff's appeal on November 29, 2017, making this the final decision of the Commissioner. AR at 1-5. Plaintiff commenced this action on January 24, 2018 (Docket # 1) and filed her motion for judgment on the pleadings on November 14, 2018 (Docket # 15). The Commissioner filed its motion for judgment on the pleadings on January 31, 2019 (Docket # 20) and Annarino replied on February 21, 2019 (Docket # 21).

For the purposes of this Decision and Order, the Court assumes the parties' familiarity with the medical evidence, the ALJ's decision, and the standard of review, which requires that the Commissioner's decision be supported by substantial evidence and free of reversible legal error. See Acierno v. Barnhart, 475 F.3d 77, 80-81 (2d Cir. 2007) (so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed), cert. denied, 551 U.S. 1132 (2007).

Discussion

Plaintiff seeks remand because (1) the ALJ failed to incorporate consultative evaluator Dr. Fabiano's findings regarding plaintiff's stress into the RFC; (2) the ALJ failed to develop the record; and (3) the AC improperly rejected new and material evidence. Pl.'s Br. (Docket # 15-1) at 15-30. I disagree with plaintiff's arguments and find that remand is not warranted.

The ALJ's Incorporation of Stress Findings: First, plaintiff argues that despite giving "substantial weight" to Dr. Fabiano's consultative opinion, the ALJ ignored Dr. Fabiano's findings regarding stress and failed to incorporate them into the RFC. In response, the Commissioner argues that the ALJ incorporated Dr. Fabiano's stress findings by limiting plaintiff to "occasional interaction with co-workers," no "work in teams or tandem with others," and only "incidental contact with the general public." AR at 22. I agree with the Commissioner that this RFC properly accounts for Dr. Fabiano's opinion that plaintiff "appears to have some moderate limitations in her ability to appropriately deal with stress due to psychiatric symptoms." AR at 399.

Pursuant to the Commissioner's policy guidance, the ALJ is required to make a thorough, individualized assessment of stress in his or her RFC. See Petrie v. Astrue, No. 08-cv-1289, 2010 WL 1063836, at *2 (N.D.N.Y. Mar. 19, 2010) ("When 'determining whether mentally impaired individuals will be able to adapt to the demands

3

of stress of the workplace,' the ALJ is required to make a thorough, individualized evaluation . . . ." (quoting Soc. Sec. Ruling 85-15, 1985 WL 56857, at *4-5)), aff'd, 412 F. App'x 401 (2d Cir. 2011). Specifically, the ALJ must address the individual's ability "to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." Soc. Sec. Ruling 85-15, 1985 WL 56857, at *4-5. However, "even without explicitly referencing a stress limitation, an RFC determination may adequately account for a claimant's stress-related limitations." Herb v. Comm'r of Soc. Sec., 366 F. Supp. 3d 441, 447 (W.D.N.Y. 2019) (finding that an RFC that does not limit a plaintiff to simple work, limits plaintiff to occasional interaction with the public, and allows frequent interaction with co-workers does not adequately account for plaintiff's stress). "For example, an RFC limiting a plaintiff to occasional interaction with co-workers and the public, and to the performance of simple, routine tasks, may account for the plaintiff's stress-related limitations." Id.; Ridosh v. Berryhill, No. 16-CV-6466L, 2018 WL 6171713, at *4 (W.D.N.Y. Nov. 26, 2018) ("Yet he still credited Dr. Lin's opinion regarding Ridosh's social withdrawal by 'limiting [Ridosh] to occasional interaction with his co-workers and the public, . . . and further

4

limiting Ridosh to simple, routine tasks, consistent with both Dr. Lin's and Dr. Blackwell's opinions.'").

While the ALJ may not have mentioned stress explicitly here, she <u>did</u> incorporate the <u>effects</u> that stress would have on plaintiff's ability to function in the workplace into the RFC. Having incorporated Dr. Fabiano's opinion on plaintiff's ability to understand and remember simple instructions into the RFC, the ALJ addressed Dr. Fabiano's stress findings by limiting plaintiff to only "occasional interaction with co-workers" and no "work in teams or tandem with others." AR at 22. The ALJ further limited plaintiff to "incidental contact with the general public." AR at 22. The ALJ also acknowledged plaintiff's self-reported agoraphobia and difficulty leaving her house and being in crowds by limiting plaintiff to work that "does not require driving a motor vehicle or using public transportation."[1] AR at 22.

---

[1] Several doctors' notes document plaintiff's concern that "she cannot leave the house without her grandmother and cannot use public transportation." AR at 497. Plaintiff's hearing testimony also supports her problems being around groups of people. See AR at 40 ("I can't be in crowds. I can't be around people."); AR at 41 ("[I]t's certain times that I get really sick that I can't leave my house, I can't be in the ride [sic] more than two minutes long."); AR at 45 ("I don't leave my house."). Nevertheless, plaintiff does not argue that the ALJ erred in failing to find her apparent "agoraphobia" to be a severe impairment at Step Two or explain how the RFC's limitations for plaintiff's depression, panic disorder, and anxiety fail to account for any agoraphobia-related limitations. See generally Ellis v. Comm'r of Soc. Sec., No. 3:11-CV-1205 GTS/ATB, 2012 WL 5464632, at *9 (N.D.N.Y. Sept. 7, 2012), ("[T]he fact that Dr. Lin diagnosed agoraphobia is not necessarily indicative of total disability. As stated above, agoraphobia is related to panic disorder. The ALJ considered plaintiff's panic disorder as a severe impairment and considered the effect of this disorder on plaintiff's ability to work."), <u>report and recommendation adopted sub nom.</u> Ellis v. Astrue, No. 3:11-CV-1205 GTS/ATB, 2012 WL 5464612 (N.D.N.Y. Nov. 8, 2012). Here, while plaintiff's testimony and

As discussed above, these additional limitations for simple work and interaction with co-workers adequately account for plaintiff's stress limitations, despite the fact that the RFC does not explicitly use the term "stress." See Reyes v. Colvin, No. 14-CV-734-JTC, 2016 WL 56267, at *5-6 (W.D.N.Y. Jan. 5, 2016) ("In the court's view, although the ALJ did not specifically include stress limitations in his RFC assessment, his reliance on the findings and observations of the consultative medical sources in terms of their consideration of plaintiff's stress-related functional limitations, as well as his comprehensive consideration of the hearing testimony, objective medical evidence, and treating and consultative medical source opinions, represents the kind of thorough, individualized mental RFC evaluation contemplated by SSR 85-15 and the overall requirements of the Social Security regulations and rulings."); see also Scanlon v. Colvin, No. 15-CV-0145-A, 2016 WL 4944332, at *8 (W.D.N.Y. Sept. 16, 2016) ("On the basis of this assessment, Plaintiff Scanlon's ability to perform simple work with occasional contact with others adequately reflects his limitations with regard to stress and is supported by

---

treatment notes confirm plaintiff's difficulty being around crowds, it also confirms that she has the capability to interact with people when necessary. See AR at 398 (discussing plaintiff leaving the home for shopping and medical appointments). Absent from the record is what impact plaintiff's agoraphobia has on her functional limitations. In light of the lack of evidence linking plaintiff's agoraphobia to her ability to work, the RFC limiting plaintiff to light work with minimal contact with others and no public transportation is supported by substantial evidence.

the evidence of record."); Cosme v. Colvin, No. 15-CV-6121P, 2016 WL 4154280, at *13 (W.D.N.Y. Aug. 5, 2016) (RFC limiting plaintiff to unskilled work that did not require contact with coworkers or the public "adequately accounted for [plaintiff's] limitations, including any limitations dealing with stress"); Steffens v. Colvin, No. 6:14-CV-06727 (MAT), 2015 WL 9217058, at *4 (W.D.N.Y. Dec. 16, 2015) ("In this case, the RFC finding requiring low contact with coworkers and the public adequately accounted for plaintiff's stress.").

Contrary to Annarino's argument, the assigned RFC is consistent with Dr. Fabiano's opinion regarding plaintiff's mental functioning and stress limitation. The ALJ adopted Dr. Fabiano's findings that plaintiff would be able to understand, remember, and carry out simple instructions and maintain attention and concentration. AR at 22. In doing so, the ALJ fulfilled the Commissioner's directive to address a plaintiff's ability "to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." Soc. Sec. Ruling 85-15, 1985 WL 56857, at *4-5. Substantial evidence supports these limitations as well as plaintiff's inability to interact frequently with coworkers, supervisors, and the public. Accordingly, the RFC adequately accounts for plaintiff's non-exertional job-related limitations.

7

The ALJ Did Not Fail to Develop the Record: Plaintiff faults the ALJ for failing to develop the record in light of the absence of treating source opinions. I find that there was no gap in the record that required the ALJ to seek further clarification.

"[I]t is the ALJ's duty to develop the record and resolve any known ambiguities, and that duty is enhanced when the disability in question is a psychiatric impairment." Camilo v. Comm'r of the Soc. Sec. Admin., No. 11 CIV. 1345 DAB MHD, 2013 WL 5692435, at *22 (S.D.N.Y. Oct. 2, 2013). This heightened duty in cases involving psychiatric impairments has been discussed in numerous cases in the Second Circuit and elsewhere. See Gabrielsen v. Colvin, No. 12-CV-5694 KMK PED, 2015 WL 4597548, at *4 (S.D.N.Y. July 30, 2015) (collecting cases). Failure to meet this duty requires remand to allow full development of an adequate record. Id. Here, however, there were no ambiguities in the record that required further development. Plaintiff's treating sources either found that she did not have the limitations she self-reported or they declined to provide any opinion on the matter.

It is true that plaintiff's treating doctor at Jericho Road Family Practice, Anselm George, M.D., did not submit an opinion regarding plaintiff's functional capacity. Nevertheless, the record notes that on October 12, 2015, Dr. George responded to plaintiff's statement that she had applied for Social Security benefits by telling plaintiff "that the goal of treatment is not

8

to have Social Security approved but to improve the patient's health." AR at 497. Later that month, another doctor at Jericho Road Family Medicine - Dr. Myron Glick - similarly "encouraged [patient] to focus on getting better as compared to getting SSI. She is young, talented and has a future. I do not see this as a permanent disability." AR at 501. Dr. Glick reiterated this point in treatment notes dated January 6, 2016. AR at 513. Further, in a response to plaintiff's request, plaintiff's treating mental health therapists at Lake Shore Behavioral Health, Inc. indicated on June 23, 2016 that they could not "provide adequate information related to the questions posed on [the RFC questionnaire] and do not observe or have any opportunity to determine how a person responds in a work environment." AR at 523. Therefore, they "suggest[ed] that a private psychiatric consultation be sought." AR at 523.

Plaintiff's doctors' suggestion that plaintiff did not have a permanent disability and plaintiff's treating therapists' decision to decline providing any opinion on the matter do not rise to the level of ambiguities requiring further development of the record. In fact, Dr. Glick's treating source opinion that plaintiff's limitations were not permanent - if credited under the treating physician rule[2] - actually <u>support</u> plaintiff's limitations

---

[2] The treating physician rule, set forth in the Commissioner's own regulations, "mandates that the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not

9

as articulated in the RFC. Moreover, it is entirely unclear how the ALJ could seek further clarification from plaintiff's therapists when they specifically declined to provide the information sought. See Kentile v. Colvin, No. 8:13-CV-880 MAD/CFH, 2014 WL 3534905, at *7 (N.D.N.Y. July 17, 2014) (finding that even if doctor was considered a treating physician, the doctor "was asked to provide an opinion on plaintiff's ability to perform work-related functions and refused to do so. Thus, the ALJ was not required to assign significant weight to [the doctor's] opinions or to explain her reasoning for failing to assign such weight").

Even if the treating records did create ambiguities, the ALJ sought to resolve any such ambiguities through a consultative psychiatric evaluation, as suggested by plaintiff's treating therapists. See 20 C.F.R. §§ 404.1519a, 416.919a; cf. Dye v. Comm'r of Soc. Sec., 351 F. Supp. 3d 386, 394 (W.D.N.Y. 2019) (in the context of meeting the ALJ's duty to develop the record "[t]he ALJ should have, at a minimum, secured a consulting physician to examine Plaintiff and render an opinion as to his functional limitations"); Helwig v. Comm'r of Soc. Sec., No. 1:17-CV-0859 (WBC), 2018 WL 6330242, at *3 (W.D.N.Y. Dec. 4, 2018) ("Failure to obtain a consultative examination where necessary for the ALJ to

---

inconsistent with other substantial record evidence." Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000); see 20 C.F.R. § 416.927(c)(2)("Generally, we give more weight to medical opinions from your treating sources.").

make an informed decision is remandable error."). The ALJ therefore met any duty to develop the record by seeking out and obtaining a consultative evaluation from Dr. Fabiano.

Plaintiff obviously disagrees with much of the substance of Dr. Fabiano's opinion, but that disagreement does not require the ALJ to seek a different opinion. "Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position." Hanson v. Comm'r of Soc. Sec., No. 315CV0150GTSWBC, 2016 WL 3960486, at *12 (N.D.N.Y. June 29, 2016), report and recommendation adopted sub nom. Hanson v. Colvin, No. 315CV150GTSWBC, 2016 WL 3951150 (N.D.N.Y. July 20, 2016). Rather, a plaintiff must show "that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in [the] record." Id. (citing Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012)); see also Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute their own judgment even if they might justifiably have reached a different result upon a de novo review). As discussed above, plaintiff's treating doctors suggested that plaintiff did not have permanent mental impairments and plaintiff's treating therapists refused to provide any opinion

11

on the matter. These realities do not amount to ambiguities in the record that the ALJ was required to resolve.

Submission of New and Material Evidence: Finally, plaintiff argues that the AC erred in refusing to consider additional records submitted to it. The Commissioner argues that these records either would not change the outcome of the decision or were from outside the relevant time-period. I agree that none of the records would change the outcome of the Commissioner's decision and accordingly I conclude that remand is not warranted.

"Pursuant to 20 C.F.R. § 416.1470(b), the Appeals Council must consider additional evidence that a claimant submits after the ALJ's decision if it is new, material, and relates to the period on or before the ALJ's decision." Hollinsworth v. Colvin, No. 15-CV-543-FPG, 2016 WL 5844298, at *3 (W.D.N.Y. Oct. 6, 2016). To be "material," evidence must be "both relevant to the claimant's condition during the time period for which benefits were denied and probative." Davidson v. Colvin, No. 1:12-CV-316 MAD/VEB, 2013 WL 5278670, at *7 (N.D.N.Y. Sept. 18, 2013) (citing Sergenton v. Barnhart, 470 F. Supp. 2d 194, 204 (E.D.N.Y. 2007)). "Evidence is new when it is not duplicative, cumulative or repetitive." Pike v. Barnhart, No. 05-CV-1249 (VEB), 2008 WL 4107172, at *8 (N.D.N.Y. Aug. 28, 2008). "If the Appeals Council fails to consider new, material evidence, 'the proper course for the reviewing court is to remand the case for reconsideration in light of the new

12

evidence.'" Davidson, 2013 WL 5278670, at *7 (quoting Shrack v. Astrue, 608 F. Supp. 2d 297, 302 (D. Conn. 2009)). Where "the additional evidence undermines the ALJ's decision, such that it is no longer supported by substantial evidence, then the case should be reversed and remanded." Webster v. Colvin, 215 F. Supp. 3d 237, 244 (W.D.N.Y. 2016).

The AC determined that the records submitted to it either did not show a reasonable probability of changing the outcome of the decision or did not relate to the period at issue. I agree. None of the records submitted to the AC show a reasonable probability of changing the decision.

First, the documents the AC determined did not show a reasonable probability of changing the ALJ's decision (see AR at 569-633, 638-63), are duplicative of other documents in the record. For example, these records indicate that plaintiff had previous suicide attempts and feelings of despair. AR at 572-73. They further discuss plaintiff's problems with school as a child (AR at 584-95), her current quality of life (AR at 602-05), and that she has panic attacks and mood swings (AR at 616, 625-29). Medical records from October 12, 2016 reiterate plaintiff's diagnoses of bipolar and panic disorder with agoraphobia (AR at 655), which are referenced elsewhere in the record before the ALJ and largely incorporated into the ALJ's decision. The "new" records confirm that plaintiff has anxiety, obsessive compulsive disorder, and

13

"excessive worry." AR at 627-28. And they show that plaintiff was assessed to have a GAF score of 48. AR at 629. A report that appears to be from plaintiff's treating providers dated October 12, 2016 supplies no information on plaintiff's functional limitations but confirms that her bipolar and panic disorder with agoraphobia are permanent. AR at 655. Finally, a letter from plaintiff's counselor at Lake Shore Behavioral Health dated September 27, 2016 (AR at 661) and submitted to the AC is nearly identical in form and substance to a letter written by the same therapist on June 23, 2016 and included in the record (AR at 523).

Second, the remaining records submitted to the AC (AR at 563-68, 634-37) were properly rejected as being outside the relevant time-period. Even assuming that the records dated April 14, 2017 through June 20, 2017 were about impairments at issue *during* the relevant time, I find that those records too would not change the Commissioner's decision, so any error in refusing to consider them would be harmless. See Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010) ("Where application of the correct legal principles to the record could lead only to the same conclusion, there is no need to require agency consideration." (alterations and citations omitted)). This is so because the records submitted to the AC again consist largely of treatment notes that provide no new information about plaintiff's symptoms or ability to function in the work place. In other words, while these "new" records confirm

14

many of the symptoms and problems discussed throughout the rest of the record, they do not provide a basis to change the Commissioner's decision. For example, on April 14, 2017, plaintiff reported that she "still feels high levels of anxiety and panic." AR at 634. On April 25, 2017, she presented with "paranoid thoughts and feeling overwhelmed," had "trouble sleeping," and had fear of leaving the house. AR at 636. Finally, on June 20, 2017, plaintiff reported "feeling very anxious and has had panic attacks due to relational difficulties." AR at 565. Plaintiff's reports of anxiety and panic disorder are well-documented in the record and were found to be severe impairments. AR at 20. Furthermore, as discussed above, these impairments are fully accounted for in the RFC which limits plaintiff to simple tasks and only occasional interaction with co-workers. See AR at 22.

In sum, all the records submitted to the AC repeat information that appears throughout the rest of the record and which was considered by the Commissioner. See Evans v. Colvin, 649 F. App'x 35, 38 (2d Cir. 2016) (finding that new evidence was not material because it was duplicative and consistent with evidence in the record, and the Appeals Council did not err in failing to consider the evidence); Zabala, 595 F.3d at 409 (finding no prejudice in rejecting a treating physician's opinion where the opinion was duplicative of evidence already in the record). The "new" evidence submitted to the AC was therefore duplicative of other evidence in

15

the administrative record and would not have changed the outcome of the Commissioner's decision.

## Conclusion

For the reasons explained above, plaintiff's motion for judgment on the pleadings (Docket # 15) is **denied** and the Commissioner's motion for judgment on the pleadings (Docket # 20) is **granted**. The Commissioner's decision is therefore affirmed.

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: September 24, 2019
Rochester, New York